**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Burbey-Miller, | No. CV-17-04106-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Christopher Burbey-Miller applied for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning June 14, 2013. (A.R. 19.) The claim was denied initially on August 18, 2014, and upon reconsideration on February 26, 2015. (*Id.*) Plaintiff then requested a hearing. (*Id.*) On October 20, 2016, Plaintiff and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 33-62.)

On January 11, 2017, the ALJ issued a written decision finding Plaintiff not disabled within the meaning of the Social Security Act ("Act"), which became the Commissioner's final decision when the Appeals Council denied review. (*Id.* at 4-6.) On November 7, 2017, Plaintiff sought review by this Court. (Doc. 1.) After receipt of the administrative record (Doc. 11), the parties fully briefed the issues for review (Docs. 15, 17). For reasons stated below, the Court reverses the Commissioner's decision and remands for benefits.

//

# BACKGROUND

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff meets the status requirement of the Act through December 31, 2018, and has not engaged in substantial gainful activity since June 14, 2013, the alleged onset date. (A.R. 21.) At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, obstructive sleep apnea, degenerative disc disease status-post hiatal hernia, status-post inguinal hernia, gastroesophageal reflux disease, mood disorder, testosterone deficiency, anxiety and depression. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 22.) At step four, the ALJ found that Plaintiff:

> has the [RFC] to perform light work . . . except he can occasionally climb ladders, ropes and scaffolds, frequently climb ramps and stairs, balance, stoop knee, crouch and crawl. [He] must not be exposed to fumes, odors or poor ventilation.

> He should not be exposed to hazards such as moving machinery or unprotected heights. He is limited to simple, routine and repetitive work tasks involving simple work related decisions and simple instructions with few changes in the work setting.

(*Id.* at 25.) The ALJ also found that Plaintiff can perform past relevant work as an outside delivery driver. (*Id.* at 30.) Therefore, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 32.)

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## **DISCUSSION**

Plaintiff challenges whether the ALJ's RFC determination is supported by substantial evidence. Specifically, Plaintiff contends that the ALJ improperly discounted the opinions of his treating physicians and treating nurse practitioner, and rejected his symptom testimony.

### **I. Opinions of Treating Physicians**

Plaintiff argues that the ALJ improperly weighed the opinions of Drs. Popa and Brown. In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830

(9th Cir. 1995). The ALJ generally should give more weight to the opinion of a treating physician than to the opinion of an examining physician, and more weight to the opinion of an examining physician than to the opinion of a non-examining physician. *Orn*, 495 F.3d at 631; *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Likewise, when an examining physician's opinion is not contradicted by another physician, it may only be rejected for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is required to provide only "specific and legitimate reasons" to reject the opinion. *Id.* at 830-31. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation and citation omitted).

**A. Dr. Popa**

Dr. Popa, Plaintiff's primary care provider, opined on Plaintiff's functional capabilities. (A.R. 615-19, 672-76, 831-35.) Dr. Popa opined that Plaintiff had extreme limitations in his ability to understand, remember, and carry out simple instructions, understand and remember detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, co-workers, or supervisors, and respond appropriately to work pressure or changes in a routine work setting. (*Id.* at 834.) Based on these findings, Dr. Popa opined that Plaintiff would be off-task more than 30% of a normal workweek, he would be absent from work more than 5 days a month, and would be unable to complete an 8-hour workday more than 5 days a month. (*Id.* at 835.)

The ALJ gave Dr. Popa's opinions "minimal weight." (*Id.* at 28.) Because neither the ALJ nor the Commissioner contends that Dr. Popa's opinion is contradicted, the ALJ was required to articulate clear and convincing reasons, supported by substantial evidence

for discounting the opinion.

In explaining why Dr. Popa's opinions were discounted, the ALJ stated that "opinions as to inability to work due to cognitive limitations from mental impairments are not in Dr. Popa's area of specialty . . . ." (*Id.*) Plaintiff contends that this is contrary to controlling Ninth Circuit precedent. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 n.1 (9th Cir. 2003); *Sprague*, 812 F.2d at 1232. The Court agrees. The fact that Plaintiff's primary care provider is not a specialist is not a valid reason for discounting his opinion.[1] *See, e.g.*, *Silva v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-2258-PHX-DGC, 2018 WL 3342898, at *12 (D. Ariz. July 9, 2018).

Next, the ALJ reasoned that Dr. Popa's opinions are inconsistent with the objective medical evidence. Specifically, the ALJ found: "The available testing does suggest a degree of limitation but not to the degree that would require a finding of disabling cognitive limitations." (A.R. 28.) Although this reason would otherwise be clear and convincing, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), it is not supported by substantial evidence. Plaintiff's neuropsychological examination concluded that he has "*severe* difficulties with processing speed and working memory," which are attributable to his "psychiatric state." (A.R. at 624.) These findings are consistent with Dr. Popa's opinion that Plaintiff's depression and anxiety caused severe limitations in his ability to understand, remember, and carry out simple instructions, and understand and remember detailed instructions.

Finally, the ALJ discounted Dr. Popa's opinions because they are inconsistent with Plaintiff's daily activities. The ALJ reasoned that Plaintiff "successfully completed college level courses during the adjudicatory period obtaining a 3.61 cumulative GPA . . . [which]

---

[1] To the extent that the ALJ discounted Dr. Popa's opinion because "he has not conducted any neuropsychological testing," this is also unavailing. "An integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments – including findings and opinions of other experts." *Lester*, 81 F.3d at 833. Dr. Popa's notes reflect that not only did he refer Plaintiff for the neuropsychological evaluation, he was provided the report, and reviewed it in its entirely. (A.R. 299, 609.) Dr. Popa's opinion was based on his "notes and the evaluation by the Neuropsychiatrist." (*Id.* at 610.) Notably, on appeal, the Commissioner does not defend this reason, or Dr. Popa's lack of a medical specialty.

does not suggest disability from cognitive limitations." (*Id.* at 28.) Like before, although this reason would otherwise be clear and convincing, s*ee Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999), it is not supported by substantial evidence. Plaintiff did not obtain a 3.61 cumulative GPA "during the adjudicatory period." Nearly all of Plaintiff's associate degree was completed before the onset of his disability. After the on-set date, Plaintiff completed only a single course in the Fall 2013 and Spring 2014 semesters (A.R. 281). More telling is the extreme measures that were required for him to complete these courses. According to Julie Burbey-Miller, Plaintiff's ex-wife:

> During the Fall 2013 and Spring 2014 semesters all of [Plaintiff's] homework and exams were completed in groups. [Plaintiff] and I were both in the same courses so that *I would be able to essentially complete his work with/for him to ensure he received a passing grade*. [Plaintiff] was so close to completing the course requirements to obtain his degree when he became disabled that I made the decision to ensure he could complete it by carrying him through his final two courses so he would be able to be the first in his family to ever finish college. . . . *If I had not intervened and carried him th[r]ough the courses he would have never been able to complete the final two required courses* and he would have never finished his college degree.

(*Id.* at 283) (emphasis added).[2]

The ALJ provided three reasons for discounting Dr. Popa's opinions.[3] Only the second and third of the ALJ's articulated reasons would otherwise be clear and convincing, but neither is supported by substantial evidence. Therefore, the Court finds that the ALJ improperly discounted Popa's opinions on these functional limitations. This error undermines the ALJ's ultimate disability determination and is therefore not harmless. *See*

---

[2] Elsewhere in his opinion, the ALJ accepted the veracity of Julie's statement, finding it evidenced the "great lengths" she has undertaken "to ensure [Plaintiff] obtains what he needs. . . ." (A.R. 29.)

[3] Without explanation, the ALJ offered a separate discussion of Dr. Popa's functional assessments (A.R. 615-19, 672-76, 831-35), and his April 2015 treatment note (*id.* at 634-653). (*Id.* at 28.) The ALJ concluded that the April 2015 note should be afforded little weight because it did not offer a function-by-function analysis. (*Id.* at 634.) It is unclear why the ALJ treated this particular treatment note as separate and apart from the rest of Dr. Popa's treatment notes and functional assessments, but, in any event, the criticism is without foundation given that Dr. Popa provided several specific function assessments.

*Maydanis v. Colvin*, 119 F. Supp. 3d 969, 977 (D. Ariz. 2015).

### B. Dr. Brown

Dr. Brown, Plaintiff's treating psychologist, also rendered an opinion on Plaintiff's functional capabilities. (A.R. 611-14.) According to Dr. Brown, Plaintiff has moderate limitations in his ability to understand, remember, and carry out short and simple instructions. (*Id.* at 611-12.) He also reported that Plaintiff had moderate-to-marked limitations in his ability to carry out detailed instructions, and marked limitations in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, and make simple-work related decisions. (*Id.* at 612.)

The ALJ afforded Dr. Brown's opinion that Plaintiff had "marked limitations" in his "ability to carry out detailed three or more step instructions" little weight.[4] (*Id.* at 29.) The ALJ's only reason for discounting this opinion is that it is not supported by Plaintiff completing college level courses and graduating during the adjudicatory period. (*Id.*) This reason is specific and legitimate, but for the reasons stated above, not supported by substantial evidence. The ALJ thus erred by giving little weight to Dr. Brown's opinion that Plaintiff had marked limitations in his ability to carry out detailed instructions, and this error was not harmless. *See Maydanis*, 119 F. Supp. 3d at 977.

## II. Opinion of Treating Nurse Practitioner

Natalie Corsbie, Plaintiff's treating mental health nurse practitioner, also opined on Plaintiff's functional capabilities. (A.R. 829-30.) Corsbie opined that Plaintiff had the same work-preclusive limitations as those opined by Dr. Popa. (*Id.*)

Nurse practitioners are categorized as "other sources" under the regulations. *See* 20 C.F.R. § 404.1513(d)(1) (explicitly listing nurse practitioners as an "other source" under the regulations).[5] "[O]nly 'acceptable medical sources' can be considered treating sources,

---

[4] Although the ALJ stated that Dr. Brown found marked limitations, a review of the record reflects that Dr. Brown opined moderate-to-marked limitations with respect to carrying out detailed instructions. (A.R. 612.)

[5] The Social Security Administration has recently updated its regulations to include nurse practitioners as acceptable medical sources. 20 C.F.R. § 1502, Revisions to Rules

. . . whose medical opinions may be entitled to controlling weight." SSR 06-03P, 2006 WL 2329939 at *2 (citing 20 C.F.R. §§ 404.1527 and 416.927(d)). An ALJ "may use evidence from 'other sources' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* "Nurse practitioners are therefore not entitled to the same deference as acceptable treating physicians under the regulations." *Harris v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-2456-PHX-GMS, 2018 WL 3154471, at *2 (D. Ariz. Jun. 28, 2018). An ALJ may discount "other source" opinions by giving germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The ALJ afforded Corsbie's opinions as to Plaintiff's cognitive and social functioning "minimal weight." (A.R. 29.) The ALJ reasoned that Corsbie's opinion was entitled to minimal weight because it was inconsistent with Plaintiff's successful completion of college course and the results of his neuropsychological examination. (*Id.*) Such reasons, if supported by the record, are well-recognized as germane. *See, e.g.*, *Adams v. Berryhill*, 725 Fed. App'x 541, 542 (9th Cir. 2018). For the reasons stated above, however, the ALJ's reasons are not supported by the record. Therefore, the Court finds that the ALJ improperly discounted Corsbie's opinions.[6]

### III. Plaintiff's Symptom Testimony

Plaintiff testified that emotional problems including depression and anger prevented him from working. (A.R. 43, 51.) Plaintiff also testified that his depression made it more

---

Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,863 (Jan. 18, 2017). However, at the time of the ALJ's decision, the regulations still qualified nurse practitioners as other sources, and thus Plaintiff's case will be governed by the prior regulation.

[6] The ALJ also pointed out that, under then-applicable regulations, a nurse practitioner is not an acceptable medical source for making a determination of disability. Recently, however, the Ninth Circuit found that an ALJ's failure to credit of the nurse practitioner's opinion was not justified in light of the prominent role that the nurse practitioner played in the claimant's medical treatment. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). In *Popa*, the nurse practitioner treated the claimant for nearly eighteen months prior to the claimant's residual capacity assessment. *Id*; *see also Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (holding that, although a nurse practitioner was not an "acceptable medical source," she was still an "other source" thus there were "strong reasons to assign weight to her opinion" because the nurse practitioner was "a treating source who examined [the claimant] at least ten times over two years."). Here, Corsbie treated Plaintiff from October 2013 through at least June 2016, seeing him over twenty times in that period.

difficult to understand and remember simple instructions. (*Id.* at 50-53.) Plaintiff alleged that 4-5 days a week his depression is so bad he is unable to get out of bed. (*Id.* at 52.)

In evaluating a claimant's testimony regarding subjective pain or other symptoms, the ALJ must engage in a two-step analysis. First, the ALJ determines whether the claimant presented objective medical evidence of an impairment that reasonably could be expected to produce some degree of the symptoms alleged. Second, if the claimant makes this showing and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The Court need not uphold all of the ALJ's reasons for discrediting a claimant, so long as substantial evidence supports the ALJ's decision. *See e.g.*, *Batson*, 359 F.3d at 1197.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (A.R. at 25.) The "other evidence" offered by the ALJ includes the degree in which Plaintiff's symptoms are managed by medication and his daily activities. (*Id.* at 27.) The ALJ therefore was required to articulate clear and convincing reasons for discounting the testimony.

**A. Medication**

The ALJ's discounted Plaintiff's symptom testimony because Plaintiff's alleged symptoms were improved with "structured treatment" and "psychotropic medication." (*Id.*) Effective control of impairments with medication is a clear and convincing reason for discounting symptom testimony. *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

This reason, however, is not supported by substantial evidence. The ALJ noted that Plaintiff reported that his "anger issues had improved, he was denying paranoia, hallucinations and was reporting calmness overall. He was also reporting having structure

for the day as defined by his wife and sticking to tasks on a list. [He] has never been hospitalized due to a severe decline in cognitive function." (A.R. 27.) The ALJ's analysis demonstrates that Plaintiff's mental condition was somewhat responsive to treatment and medication. "But to reject a claimant's testimony, it is not enough for the ALJ to show that the [condition] was responsive to treatment; the ALJ must show that the [condition] was 'controlled,' i.e., no longer debilitating." *Lopez v. Colvin*, 195 F. Supp. 3d 903, 911 (D. Ariz. 2016) (internal citation omitted). The fact that Plaintiff experienced minor improvements, like fewer periods of paranoia, does not support a finding that his condition was effectively controlled. "Rather, the ALJ must show that the treatment was capable of providing lasting relief." *Id.* Here, none of the evidence relied upon by the ALJ supports a finding that Plaintiff's depression and anxiety were controlled. Even when Plaintiff's treating providers reported that treatment had stabilized symptoms, they consistently found that he continued to suffer from depression, anxiety and paranoia. (*See, e.g.,* A.R. 718-19 (continued issues with anxiety); 721 (symptomatic of paranoia, depression, and anger); 723 (anxiety continues); 729 (restless, impulsive, and irritable); 733-34 (increasing anxiety).) Because substantial evidence does not support the ALJ's finding that Plaintiff could control his depression and anxiety with medication or other treatment, it was error to reject Plaintiff's symptom testimony on this basis.

### B. Daily Activities

The ALJ's next reason for discounting Plaintiff's symptom testimony is that his alleged symptoms are inconsistent with his daily activities. (*Id.* at 27.) This is a clear and convincing reason when the activities indicate capacities are transferable to a work setting. *Molina*, 674 F.3d at 1113. Again, this reason is not supported by substantial evidence.

The entirety of the ALJ's findings were as follows: "Notably, in July 2015, [Plaintiff] was reporting that he was getting out of the house, had a better energy level, goes out with his wife, had gone camping with his wife, spent time at a swimming pool with friends of his wife and had his anger in better control." (A.R. 27.) With respect to mental health issues, however, "it is error to reject a claimant's testimony merely because

- 10 -

symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. Here, the ALJ did not select a few isolated instances of improvement, she selected a *single* isolated instance. This cannot serve as substantial evidence. Moreover, the ALJ failed to acknowledge that Plaintiff reported anxiety in connection with the camping trip (A.R. 757), and that any waxing improvements in July 2015, waned within the month, as he reported at his next appointment that he was suffering from bouts of insomnia, depression, low energy, racing thoughts, and increased frustration (*id.* at 765-66).

**C. Objective Medical Evidence**

Finally, the ALJ reasoned that "[i]n not affording disabling cognitive limitations to [Plaintiff's] [RFC], [she] considered the results of objective clinical testing in the medical records." (*Id.* at 27.) Although inconsistence with the weight of medical evidence can be clear and convincing reason for rejecting symptom testimony, it cannot serve as the only basis. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Because the ALJ's other two reasons are not supported by substantial evidence, the ALJ is unable to rely solely on the objective medical evidence to reject Plaintiff's testimony.[7] Therefore, the Court finds that the ALJ erred in rejecting Plaintiff's symptom testimony.

**REMEDY**

Having determined that the ALJ committed reversible error, the Court has discretion to remand the case for further development of the record, or to credit the improperly rejected evidence as true and remand for an award benefits. *Reddick v. Chater*, 157 F.3d

---

[7] Nevertheless, the Court finds this reason also not supported by substantial evidence. In support, the ALJ discussed the findings from Plaintiff's November 2013 and April 2015 neuropsychological evaluations. (A.R. 27.) The ALJ highlighted that Plaintiff's IQ was in the "low average range." (*Id.*) Cognitive functioning does not contradict reported symptoms of depression and anxiety. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Moreover, the physician conducting the neuropsychological examination noted that Plaintiff had "unusual performance" on some tests that "appear related [] to attention difficulties associated with his psychiatric state." (A.R. 623.)

715, 728 (9th Cir. 1998). In deciding whether to remand for an award of benefits, the Court considers whether: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Triechler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). All three conditions of the credit-as-true-rule are met here.

First, the ALJ's decision to reject Plaintiff's symptom testimony and the opinions of Plaintiff's treating physicians and nurse practitioner is neither free of legal error nor supported by substantial evidence. Second, further proceedings would not serve a useful purpose because the ALJ's error was not due to a failure to develop the record. Finally, during the hearing, the VE testified that someone with the limitations assessed by Plaintiff's treating providers would be unable to perform Plaintiff's past relevant work or other work. (A.R. 58-60.) Accordingly, if the treating providers'' opinions were credited as true, the ALJ would be required to find Plaintiff disabled. The Court therefore exercises its discretion to remand for an award of benefits.

**IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this action is **REMANDED** for an award of benefits. The Clerk of Court is directed to enter judgment accordingly and terminate this case.

Dated this 26th day of March, 2019.

Douglas L. Rayes
United States District Judge